Marika K. O'Connor Grant (SBN 334469)
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5999
Fax: (612) 584-4470
moconnorgrant@bergermontague.com

*Counsel for Plaintiff*
*(additional counsel listed on signature page)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**San Francisco Division**

| | |
|---|---|
| BEATRIZ TREJO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STANLEY CHAO; ARB RISK MANAGEMENT, LLC, ARB RISK MANAGEMENT HOLDINGS, LLC; AGUSTIN GARCIA; SARAH BROWN GARCIA; APRIL POPADITCH; PENNY MORANDA; and JOHN DOES 1 - 40,<br><br>Defendants. | Case No.3:25-cv-09758<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff Beatriz Trejo, on behalf of herself and all individuals similarly situated, by counsel, and for her Class Action Complaint against Defendants, alleges as follows:

## GENERAL ALLEGATIONS

1. This is a case about a scheme to make online, short-term loans that carry interest rates exceeding 600%—loans that are illegal in many states—and to do so with impunity.

2. High interest loans target vulnerable borrowers and, left unregulated, economically devastate borrowers and their communities. Once saddled with a predatory loan,

consumers will often take out additional loans to make ends meet and to pay off other loans, creating a cycle of mounting debt.

3. In an attempt to evade litigation and government enforcement aimed at halting these illegal lending schemes, predatory lenders have sought to cloak themselves in the sovereign immunity granted to American Indian tribes in the United States. These predatory lenders pretend to be companies created and run by tribes when, in all reality, they are run by non-tribal third parties, and the profits that these companies extract from consumers do not inure to the benefit of the tribes whose immunity these predatory lenders seek to exploit. Courts routinely reject such cynical efforts to use tribal immunity to shield plainly illegal commercial conduct.

4. At issue in this case is one such predatory tribal lending scheme.

5. The Elem Indian Colony of Pomo Indians has entered into agreements with non-tribal outsiders to lend their name to predatory lending operations, including First Loan and Right Now Loans. In exchange, the Elem Indian Colony of Pomo Indians receives a small fraction of theses businesses' revenues.

6. On their websites, First Loan and Right Now Loans purport to be tribal lending businesses that are owned and operated by the Elem Indian Colony of Pomo Indians.

7. Non-tribal members, including Stanley Chao and his companies ARB Risk Management, LLC, and ARB Risk Management Holdings, LLC, (collectively, "Chao Defendants"), run First Loan and Right Now Loans and hide behind the Elem Indian Colony of Pomo Indians' laundered sovereign immunity. The Chao Defendants and other non-tribal members have been running lending schemes for years, making usurious loans to consumers located throughout the United States. These schemes have been highly lucrative. These schemes are also illegal.

8. Plaintiff Trejo, on behalf of herself and the Classes set forth below, seeks to recover damages and penalties under state and federal law for the usurious interest and fees obtained by the Chao Defendants, and also seeks injunctive and declaratory relief against the Tribal Chairman, Secretary/Treasurer, Vice-Chair, and Member-At-Large of the Tribal Council

of the Elem Indian Colony (collectively, "Tribal Defendants") (when referred to with the Chao Defendants, "Defendants") to halt their illegal practices.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over Plaintiff's Racketeer Influenced and Corrupt Organizations ("RICO") claims under 18 U.S.C. § 1962, and 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

10. This Court also has jurisdiction under the Class Action Fairness Act because Plaintiff and at least one Defendant are citizens of different states and the matter in controversy exceeds $5,000,000, and there are at least 100 members of each Class.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in Lake County and Sonoma County, California, including in this District and Division. Additionally, venue is proper in this Court pursuant to 18 U.S.C. § 1965(a) because Defendants transacted their affairs in this District and Division. The Elem Indian Colony of Pomo Indians and the Tribal Defendants are all located in this District and Division.

12. The **Divisional Assignment.** Pursuant to Civ. L.R. 3-2(c), this action should be assigned to the San Francisco Division, as the claims arise from events occurring in Sonoma County.

## THE PARTIES

13. Plaintiff Beatriz Trejo is a natural person, citizen of the State of California, and resident of Chino, California.

14. Defendant Stanley Chao is a natural person and citizen of Florida who may be found at 10060 Hyperion Lane, Orlando, Florida 32836 or 10443 Los Feliz Drive, Orlando, Florida 32836. Defendant Chao is the beneficial owner of and operates many online websites, including First Loan and Right Now Loans Lending ("Right Now Loans"), and operates various businesses to run the websites and lending operations.

15. Defendants ARB Risk Management, LLC, and ARB Risk Management Holdings,

LLC, are Delaware companies operated by Chao through which Chao runs the illegal lending enterprise.

16. Defendant Agustin Garcia is the Tribal Chairman of the Tribal Council of the Elem Indian Colony[1], the Native American tribe that Defendants claim is running First Loan[2] and Right Now Loans.[3] He is sued in his official capacity only.

17. Defendant Sarah Brown Garcia is the Secretary/Treasurer of the Tribal Council of the Elem Indian Colony.[4] She is sued in her official capacity only.

18. Defendant April Popaditch is the Vice-Chair of the Tribal Council of the Elem Indian Colony.[5] She is sued in her official capacity only.

19. Defendant Penny Moranda is a Member At Large of the Tribal Council of Elem Indian Colony.[6] She is sued in her official capacity only.

20. Defendant John Doe Nos. 1-40 are unidentified parties who participated in the enterprise with the Defendants, including, but not limited to, individuals and entities who aided, abetted, and facilitated the conspiracy to collect the unlawful amounts from consumers.

## FACTUAL ALLEGATIONS

**The Emergence of the Tribal Lending Scheme**

21. In a tribal lending scheme, a lender affiliates with a Native American tribe in the United States in an attempt to enhance the appearance of tribal ownership of the business and insulate the scheme from federal and state law. The lender does so by piggybacking on the tribe's sovereign legal status and the tribe's general immunity from suit under federal and state laws.

---

[1] Elem Indian Colony of Pomo Indians, *Tribal Council*, http://www.elemindiancolony.org/tribal-council/ (last visited Nov. 12, 2025).

[2] First Loan, available at https://web.archive.org/web/20211125143102/https://www.firstloan.com/ (last visited Nov. 12, 2025).

[3] Right Now Loans, available at https://web.archive.org/web/20250212180112/https://www.rightnowloan.com/ (last visited Nov. 12, 2025).

[4] Elem Indian Colony of Pomo Indians, *Tribal Council*, *supra* note 1.

[5] *Id.*

[6] *Id.*

22. The purpose of the scheme is clear; non-tribal schemers "use tribal immunity as a shield for conduct of questionable legality." *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2052 (2014) (Scalia, J., dissenting) (citing Nathalie Martin & Joshua Schwartz, *The Alliance Between Payday Lenders and Tribes: Are Both Tribal Sovereignty and Consumer Protection at Risk?*, 69 Wash. & Lee L. Rev. 751, 758–759, 777 (2012)).

23. Tribal lending schemes are not designed to promote tribal businesses or prosperity. Rather, tribal lending schemes are contrivances aimed at avoiding state usury laws, with the vast majority of the businesses' revenue being funneled to non-tribal entities and with the tribes typically receiving, at most, one or two percent of the businesses' revenue.

24. In recent years, these schemes have come under increased scrutiny from regulators, with one prominent perpetrator having been convicted and sentenced to 16 years in prison for federal racketeering and truth-in-lending offenses.[7]

**The Elem Indian Colony's Involvement with Rent-a-Tribe Lending Schemes**

25. The Elem Indian Colony of Pomo Indians (the "Tribe") is a small and economically distressed Native American tribe with only a few hundred members, at most.[8]

26. The Tribe is located in Santa Rosa, California,[9] and has tribal lands in Lake County, California.[10]

27. For years, the Elem Indian Colony has helped prop up tribal lending schemes in

---

[7] *See* The United States Attorney's Office, Southern District of New York, *Scott Tucker Sentenced To More than 16 Years In Prison For Running $3.5 Billion Unlawful Internet Payday Lending Enterprise* (Jan. 8, 2018), https://www.justice.gov/usao-sdny/pr/scott-tucker-sentenced-more-16-years-prison-running-35-billion-unlawful-internet-payday.

[8] ICT Staff, *132 Elem Pomo Indians, Comprising 100 Percent Of Elem Indian Colony Residents, Face Banishment And Disenrollment*, ICT (May 3, 2016), https://ictnews.org/archive/132-elem-pomo-indians-comprising-100-percent-of-elem-indian-colony-residents-face-banishment-and-disenrollment; Federal Highway Administration, *Tribal Shares for FY22 Full Year*, https://highways.dot.gov/media/48191 (last visited Sept. 30, 2024).

[9] Elem Indian Colony, available at http://www.elemindiancolony.org/ (last visited Nov. 3, 2025).

[10] Kansas State University Technical Outreach Services for Native American Communities, *Elem Tribe, Clear Lake, California*, https://engg.k-state.edu/chsr/outreach/tosnac/sites_/elem.html (last visited Nov. 3, 2025).

an effort to secure funds to meet tribal members' needs.

28. Since at least 2018,[11] the Elem Indian Colony has allowed non-tribal outsiders, including Defendant Chao, to wield the Tribe's name in an attempt to shield from liability these non-tribal schemers and the predatory lending businesses that they run. The electronic storefronts that have used the Elem Indian Colony's name include Right Now Loans and First Loan.

29. Under the Tribe's constitution and bylaws, "the general council of the Elem Indian Colony of Pomo" is vested with the power to "promulgate and enforce ordinances." Constitution and Bylaws for the Elem Indian Colony of Pomo Indians, art. VII, § 1, pt. g.[12] The Tribe's executive committee is the body that is responsible for "[c]arry[ing] out all ordinances, resolutions, or other enactments of the general council." *Id.* at § 2, pt. a.

30. The Tribal Defendants, Agustin Garcia, Sarah Brown Garcia, April Popaditch, and Penny Moranda, are all members of the Tribe's general council and executive committee, and are those who issued, enforced, and/or carried out the Elem Indian Colony Consumer Finance Ordinance, which non-tribal schemers, including Defendant Chao, have used and are using in order to fabricate a veneer of sovereign immunity and legitimacy for their predatory lending businesses.

31. For example, Right Now Loans' website advertises a "Lender License"—supposedly issued by the Tribal Consumer Financial Department—that purports to "certif[y]" that Right Now Loans "has satisfied the criteria set forth in the Elem Indian Colony Consumer Finance Ordinance to own and operate a consumer lending business within the jurisdiction of the Elem Indian Colony of Pomo Indians."[13] The Elem Indian Colony Consumer Finance Ordinance

---

[11] First Loan, available at https://web.archive.org/web/20181220210030/https://www.firstloan.com/ (last visited Nov. 5, 2025).

[12] Elem Colony of Pomo Indians, *Constitution and Bylaws*, http://www.elemindiancolony.org/constitution-and-bylaws/ (last visited Nov. 5, 2025).

[13] Right Now Loans, *Lending License*, available at https://web.archive.org/web/20240714041121/https://www.rightnowloan.com/lending-license/ (last visited Nov. 12, 2025).

is not publicly available. Discovery will show that Right Now Loans had to satisfy only very lax criteria (far less than those required under parallel provisions of California law) in order to be deemed a “lending business within the jurisdiction of the Elem Indian Colony of Pomo Indians.” Discovery will also show that there is virtually no oversight of Right Now Loans by the Tribe. The façade of legitimacy created by the existence of this “license” misleads consumers into believing that the lending business is tribal and that there is some level of oversight and regulation of the business by the Elem Indian Colony of Pomo Indians. This is just one way in which the Tribal Defendants’ actions have enabled the Chao Defendants’ illegal lending scheme.

32. On their websites, Right Now Loans and First Loan claim to be tribal lending enterprises owned and operated by the Elem Indian Colony.

33. Right Now Loans and First Loan’s claims of tribal ownership and operation are false. Indeed, such claims are impossible in light of the Tribe’s size and financial situation. The Elem Indian Colony, which is small and financially challenged, is quite simply unable to provide the sort of financial backing required to own and operate a consumer lending business. Because of this, the Elem Indian Colony has partnered with non-tribal schemers, including Defendant Chao, to finance and run these predatory lending enterprises.

34. Further undercutting the illusion of tribal ownership that Defendants have fabricated for the predatory lending scheme is the reality that the vast majority of the Elem Indian Colony’s lending operations were carried out and continue to be carried out in locations off of the Tribe’s reservation. By all accounts, there are few to no actual employees of the predatory lending enterprise who work on the Elem Indian Colony’s reservation lands.

35. By contrast, Defendants’ off-reservation operations are comprehensive and include, but are not limited to, lead generation, marketing, funding, underwriting, payment processing, and collection.

36. Defendant Chao owns and operates a collection of companies, including ARB Risk Management Holdings, LLC, ARB Risk Management, LLC, and ARB Call Facilities Inc., which are generally referred to on LinkedIn as the “ARB Companies.” (Exhibit A.) These

companies claim to "offer data analytic services" and boast that they have "reviewed, analyzed, and decisioned millions of customer loan applications via our proprietary algorithms. Daily volume can exceed 200,000 loan applications." *Id.* One of ARB Risk Management LLC's specialties is "Loan Underwriting." *Id.* The ARB Companies claim to be based in the Philippines, including operating call centers in Costa Rica and the Philippines. *Id.*

37. That is, Defendant Chao, ARB Risk Management Holdings, LLC, and ARB Risk Management, LLC, are the parties that actually own and operate Right Now Loans and First Loan.

38. Defendant Chao, ARB Risk Management Holdings, LLC, ARB Risk Management, LLC, and the lending enterprise's subsidiaries and affiliates are those that registered the website domains for Right Now Loans and First Loan's electronic storefronts and created website content that claims an illegitimate tribal affiliation. It is through these websites that the Chao Defendants, and their employees, subsidiaries, and affiliates advertise their consumer loans and promote their illegitimate tribal identity.

39. Exactly as ARB Risk Management Holdings, LLC and ARB Risk Management, LLC advertise, the Chao Defendants, and their employees, subsidiaries, and affiliates are the parties that perform the underwriting of the loans issued by Right Now Loans and First Loan. More specifically, the Chao Defendants, and their employees, subsidiaries, and affiliates obtain consumer reports on consumers from consumer reporting agencies in order to evaluate consumer credit and develop underwriting criteria for lending.

40. The Chao Defendants, and their employees, subsidiaries, and affiliates also engage in marketing activities, including by communicating with consumers to urge them to take out loans and creating incentive programs to encourage consumers to continue borrowing from Right Now Loans and First Loan.

41. The Chao Defendants, and their employees, subsidiaries, and affiliates are also the parties that issue and administer the loans. More specifically, these parties draft loan contracts and other policy documents claiming an illegitimate tribal affiliation; employ a bank to provide access to the automated clearing house ("ACH") network to facilitate deposits and withdrawals

of money from consumer bank accounts through the ACH; accept and process loan payments through means other than the ACH network; and otherwise service the loans, including by engaging in debt collection activities such as emailing, calling, and texting consumers urging them to pay off their loans. It is through these actions, among others, that the Chao Defendants, and their employees, subsidiaries, and affiliates make so much money off of consumers.

42. The Chao Defendants, and their employees, subsidiaries, and affiliates also provide or facilitate the funds to finance the loans and other activities of the lending scheme, and then use the money that they extract from consumers to repay the scheme's investors.

43. The Elem Indian Colony, therefore, does not participate in day-to-day lending operations of the scheme's affiliates and subsidiaries, including Right Now Loans and First Loan.

44. Rather, the Elem Indian Colony and tribal members agreed to allow the Chao Defendants and other non-tribal outsiders to claim that the tribal lending enterprise is tribal, in exchange for a pittance from the scheme's profiteers.

45. The profits made by Right Now Loans and First Loan do not flow to the Elem Indian Colony. Instead, the vast majority of the profits flow to nontribal schemers, including Defendant Chao, who have attempted to exploit tribal sovereign immunity to protect themselves from liability for their violations of state and federal laws.

**Defendants' Tribal Lending Scheme at Issue in this Case**

46. In addition to feigning sovereign immunity in an attempt to insulate themselves from liability, Right Now Loans and First Loan are not licensed to lend in the states in which they are lending and are lending at interest rates that are illegal in many states. The only license that these predatory lending operations purport to have been issued in connection with their predatory lending scheme is a "Lender License" that Right Now Loans posted on its website, which merely certifies that the business has satisfied undisclosed criteria permitting them to "own and operate a consumer lending business within the jurisdiction of the Elem Indian Colony of Pomo

Indians."[14]

47. Right Now Loans and First Loan offered short-term loans with exorbitant finance charges and triple-digit interest rates. Because of the high interest rates attached to these loans, the finance charges that consumers pay often quickly exceed the amount borrowed. Consumers often find themselves in a destructive feedback loop wherein they are forced to take out a series of these loans to make ends meet and/or to pay off prior loans, losing thousands of dollars to exorbitant finance charges in the process.

48. Under the terms of Right Now Loans and First Loan's loan agreements, Defendants lent borrowers small sums of money and charged annual interest rates in the high triple digits—rates invariably exceeding 600 percent. First Loan, in fact, advertised in August 2020 that the APRs on its loans ranged between 615% and 859%.[15] As a result of these exorbitant finance charges, Plaintiff Trejo and others ended up owing many times the amount of money that they initially borrowed.

49. The interest rates that Right Now Loans and First Loan charged under these loan agreements are many times the caps imposed by state law in many jurisdictions, including California, where Plaintiff Trejo resides.

50. From her residence in Chino, California, Plaintiff Trejo applied for and took out her first loan with Right Now Loans over the internet in March 2024 in order to pay for car repairs. At the time she took out the loan, Plaintiff Trejo believed that Right Now Loans was operating lawfully and lending at rates that complied with the law.

51. Plaintiff Trejo's first loan from Right Now Loans was for $1,500 and had an interest rate of 768.77%. (*See* Exhibit B, Trejo 3/15/2024 Loan Agreement.) According to the loan agreement, the finance charge on the loan was $10,043.18. Excepting the final payment, the

---

[14] Right Now Loans, *Lending License*, https://web.archive.org/web/20240714041121/https://www.rightnowloan.com/lending-license/ (last visited Nov. 12, 2025).

[15] First Loan, Frequently Asked Questions, https://web.archive.org/web/20200809075051/https:/www.firstloan.com/first-loan-frequently-asked-questions#middle (last visited Nov. 12, 2025).

bi-weekly payment on the loan was $480.94. If Plaintiff Trejo had made all of the payments on her loan according to the payment schedule, she would have ended up paying Defendants $11,543.18 for her $1,500 loan—well over seven times what she borrowed. Plaintiff Trejo made sixteen payments on her loan, for a total of at least $5,928.46 in payments.

52. In December 2024, again from her residence in Chino, California, Plaintiff Trejo applied for and took out a second loan with Right Now Loans over the internet, this time to pay for home repairs. At the time she took out the loan, Plaintiff Trejo believed that Right Now Loans was operating lawfully and lending at rates that complied with the law.

53. Plaintiff Trejo's second loan from Right Now Loans was for $2,400 and had an interest rate of 678.27%. (*See* Exhibit C, Trejo 12/10/2024 Loan Agreement.) According to the loan agreement, the finance charge on the loan was $15,555.82. Excepting the final payment, the bi-weekly payment on the loan was $748.20. If Plaintiff Trejo had made all of the payments on her loan according to the payment schedule, she would have ended up paying Defendants $17,955.82 for her $2,400 loan—well over seven times what she borrowed. Plaintiff Trejo made thirteen payments on her loan, for a total of $3,224.10 in payments. Upon learning of the illegality of her loans from Right Now Loans, Plaintiff Trejo ceased making payments on her second loan.

54. Right Now Loans lists its address, both on its website and in Plaintiff Trejo's loan agreements, as P.O. Box 4102, Clearlake, CA 95422.

55. The State of California sets the maximum allowable interest rate on a consumer loan at 10%. Cal. Const. Art. XV § 1.

56. Defendants' loans to Plaintiff Trejo and other California residents all carried interest rates that were many times California's 10% interest rate cap.

57. California's unfair competition laws prohibit unfair or deceptive business practices. Cal. Bus. & Prof. Code § 17200.

58. Defendants unlawfully lent money to Plaintiff Trejo and other California residents through illegal loans marred by usurious interest rates, all of which amounts to a violation of California's unfair competition laws' prohibition against unlawful and unfair, business practices.

## CLASS ACTION ALLEGATIONS

59. Plaintiff Trejo asserts claims on behalf of the proposed National Class defined as follows:

> All United States residents who entered into loan agreements with Right Now Loans, First Loan, or other lending affiliates or subsidiaries of the Elem Indian Colony of Pomo Indians within the applicable statute of limitations. This Class does not include loans that were taken out while a consumer was located in Utah or Nevada.

60. Plaintiff Trejo asserts claims on behalf of the proposed California Class defined as follows:

> All California residents who entered into loan agreements with Right Now Loans, First Loan, or other lending affiliates or subsidiaries of the Elem Indian Colony of Pomo Indians within the applicable statute of limitations.

**A. Numerosity**

61. There are hundreds or thousands of members of the Classes. Thus, the Classes are so numerous that joinder of all members is impracticable.

**B. Commonality**

62. There are numerous common questions of law and fact common to Plaintiff Trejo and the members of the Classes. These questions include, but are not limited to, the following:

a. Whether Defendants violated state usury and consumer protection laws;

b. Whether Defendants are protected by tribal sovereign immunity;

c. Whether Defendants engaged in unfair or deceptive acts or practices;

d. Whether Defendants constitute an "enterprise" under RICO;

e. Whether Defendants violated RICO by charging interest rates more than twice the legal limit under state law;

f. The scope of any prospective relief; and

g. The proper measure and amount of damages for the Classes.

**C. Typicality**

63. Plaintiff Trejo's claims are typical of the claims of the Classes she seeks to

represent. Plaintiff Trejo, like members of the Classes, took out usurious loans from Defendants. Thus, Plaintiff Trejo's claims, like the claims of the Classes, arise out of the same common practices and conduct by Defendants and are based on the same legal and remedial theories.

**D. Adequacy**

64. Plaintiff Trejo will fairly and adequately protect the interests of the Classes. Plaintiff Trejo has competent and capable attorneys who are experienced trial lawyers with significant experience litigating complex class actions, including experience litigating tribal lending cases. Plaintiff Trejo and her counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiff Trejo nor her counsel have interests that conflict with those of the Classes.

**E. Injunctive Relief**

65. The Classes meet the requirements for certification to obtain injunctive or equitable relief under Fed. R. Civ. P. 23(b)(2), as Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole. Prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for Defendants.

**F. Predominance and Superiority**

66. The Classes meet the requirements for certification to seek monetary relief under Federal Rule of Civil Procedure 23(b)(3), as the questions of law or fact common to class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Additionally, individual actions may be dispositive of the interests of members of the Classes even though certain members of the Classes are not parties to such actions. Further, a class action is superior to other available methods for the fair and efficient adjudication of the controversy for at least the following reasons:

a. Absent a class action, as a practical matter, members of the Classes will be unable to obtain redress, Defendants' violations will continue without remedy, and additional consumers will be harmed.

b. It would be a substantial hardship for most individual members of the Classes if they were forced to prosecute individual actions.

c. A class action will permit an orderly and expeditious administration of class claims and foster economies of time, effort, and expense.

d. The lawsuit presents no difficulties that would impede its management by the Court as a class action.

e. Defendants have acted on grounds generally applicable to class members, making class-wide relief appropriate.

## <u>CAUSES OF ACTION</u>

### <u>FIRST CLAIM FOR RELIEF</u>
### Violation of RICO, 18 U.S.C. § 1962(c)
### (On Behalf of Plaintiff Trejo and the National Class)
### (Class Claims against the Chao Defendants)

67. Plaintiff Trejo realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

68. Each Defendant is a "person" as that term is defined in 18 U.S.C. § 1964(3).

69. The Enterprise, consisting of each of the named Chao Defendants, the Tribal Defendants, and the unnamed officers, executives, and other employees of Right Now Loans, First Loan, and the Chao Defendants' other companies involved in the scheme, is in association as an "enterprise" as that term is defined in 18 U.S.C. § 1961(4). The Enterprise associated for the common purpose of profiting off of the collection on unlawful debt by offering and collecting on loans to consumers throughout the United States through online lenders affiliated with the Chao Defendants.

70. The Enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

71. The Chao Defendants violated § 1962(c) of RICO by participating, directly or indirectly, in the conduct of the Enterprise's affairs in the collection of unlawful debt.

72. RICO defines "unlawful debt" as a debt which was "unenforceable under State law in whole or in part as to principal or interest because of the laws relating to usury," and was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

73. All of the loans made to the National Class members and collected by the Chao Defendants included an interest rate far in excess of twice the enforceable rate in their respective states.

74. The Chao Defendants charged Plaintiff Trejo interest rates in excess of the maximum rate allowed in her state knowingly, deliberately, intentionally, and willfully, with the purpose of taking more than twice the legal rate of interest for the money loaned to Plaintiff Trejo.

75. The Chao Defendants' conduct was not the result of good-faith error, but instead was a knowing, deliberate, intentional, and willful scheme to circumvent laws in Plaintiff Trejo's state, and to collect interest at rates more than twice that allowed under that state's laws.

76. Plaintiff Trejo and the National Class members were injured as a result of the Chao Defendants' violations of 18 U.S.C. § 1962(c) by, among other things, the payment of unlawful and usurious rates of interest on loans made by the Enterprise.

77. This conduct continues to date, and will be repeated again and again in the future, to the detriment of consumers.

78. Accordingly, the Chao Defendants are jointly and severally liable to Plaintiff Trejo and the National Class members for their actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## SECOND CLAIM FOR RELIEF
**Violation of RICO, 18 U.S.C. § 1962(d)**
**(On Behalf of Plaintiff Trejo and the National Class)**
**(Class Claims against the Chao Defendants)**

79. Plaintiff Trejo realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

80. Each Chao Defendant is a "person" as that term is defined in 18 U.S.C. § 1964(3).

81. The Enterprise, consisting of each of the named Chao Defendants, the Tribal Defendants, and the unnamed officers, executives, and other employees of Right Now Loans, First Loan, and Chao Defendants' other companies involved in the scheme, is in fact an "enterprise" as that term is defined in 18 U.S.C. § 1961(4). The Enterprise associated for the common purpose of profiting off of the collection on unlawful debt by offering and collecting on loans to consumers throughout the United States through online lenders affiliated with the Chao Defendants.

82. The Enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

83. The Chao Defendants violated 18 U.S.C. § 1962(d) by conspiring to use the Enterprise to collect unlawful debt. Each of the Chao Defendants knowingly agreed to participate in the scheme alleged herein that allowed the Enterprise to make and collect unlawful debt at more than twice the lawful rate of interest under state usury laws.

84. This conduct continues to date, and will be repeated again and again in the future, to the detriment of consumers.

85. Accordingly, the Chao Defendants are jointly and severally liable to Plaintiff Trejo and the National Class members for their actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## <u>THIRD CLAIM FOR RELIEF</u>
**Violations of California's Usury Law**
**(On Behalf of Plaintiff Trejo and the California Class)**
**(Class Claims against the Chao Defendants)**

86. Plaintiff Trejo realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

87. Under the California Constitution, the maximum allowable interest rate on a

consumer loan is 10% per annum. Cal. Const. Art. XV § 1.

88. All of the loans made to California consumers in the name of Right Now Loans, First Loan, and/or other lending affiliates or subsidiaries of the Elem Indian Colony of Pomo Indians carried an annual interest rate well in excess of 10%.

89. Accordingly, Plaintiff Trejo and members of the California Class are entitled to recover all interest paid on the loans in excess of 10%, plus treble damages for any interest paid within the year preceding the filing of this action and their attorneys' fees and costs. Cal. Civ. Code § 1916-3.

**FOURTH CLAIM FOR RELIEF**
**Violations of Cal. Bus. & Prof. Code § 17200**
**(On Behalf of Plaintiff Trejo and the California Class)**
**(Class Claims against the Chao Defendants)**

90. Plaintiff Trejo realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

91. As alleged above, the Chao Defendants engaged in unlawful and unfair business practices through the sham relationship with the Elem Indian Colony of Pomo Indians in order to make high-interest loans to consumers throughout the country, including in California.

92. Accordingly, Plaintiff Trejo and California Class members are entitled to recover as restitution all interest paid on the loans in excess of 10%. Cal. Bus. & Prof. Code § 17203.

**FIFTH CLAIM FOR RELIEF**
**Violations of Cal. Bus. & Prof. Code § 17200**
**(On Behalf of Plaintiff Trejo and the California Class)**
**(Class Claims against the Chao Defendants)**

93. Plaintiff Trejo realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

94. As alleged above, the Chao Defendants engaged in unlawful and unfair business practices through the sham relationship with the Elem Indian Colony of Pomo Indians in order to make high-interest loans to consumers throughout the country, including in California. These practices are ongoing.

95. Accordingly, Plaintiff Trejo and California Class members are entitled to obtain

an injunction prohibiting any future collection of the loans. Cal. Bus. & Prof. Code § 17203.

**SIXTH CLAIM FOR RELIEF**
**Quasi-Contract**
**(On Behalf of Plaintiff Trejo and the National Class)**
**(Class Claims against the Chao Defendants)**

96. Plaintiff Trejo realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

97. To the detriment of Plaintiff Trejo and members of the National Class, the Chao Defendants have been, and continue to be, unjustly enriched as a result of charging and collecting illegal, usurious interest rates from Plaintiff Trejo and members of the National Class.

98. The Chao Defendants deceived Plaintiff Trejo and the National Class as to the lawfulness of their loans and the interest rates charged thereupon.

99. The Chao Defendants' attempt to exact the usurious rate of interest rendered related provisions in Plaintiff Trejo and the National Class members' loan agreements unenforceable.

100. As between the parties, it would be unjust for the Chao Defendants to retain the benefits attained by their actions. Accordingly, on behalf of herself and members of the National Class, Plaintiff Trejo seeks a full accounting and restitution of the Chao Defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful conduct alleged herein.

**SEVENTH CLAIM FOR RELIEF**
**Civil Conspiracy**
**(On Behalf of Plaintiff Trejo and the National Class)**
**(Class Claims against the Chao Defendants)**

101. Plaintiff Trejo realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

102. All of the loans to consumers made in the name of Chao Defendants' lending companies Right Now Loans, First Loan, and/or other lending affiliates or subsidiaries of the Elem Indian Colony of Pomo Indians violated Plaintiff Trejo and the National Class members' respective states' interest rates and lending laws.

103. The Chao Defendants conspired amongst themselves and with other actors to violate state usury and lending laws and profit from those violations.

104. Accordingly, on behalf of herself and the members of the National Class, Plaintiff Trejo seeks to recover from the Chao Defendants, jointly and severally, all amounts repaid on any loans with the Chao Defendants.

**EIGHTH CLAIM FOR RELIEF**
**Declaratory Judgment, 28 U.S.C. § 2201**
**(On Behalf of Plaintiff Trejo and the California Class)**
**(Class Claims against Tribal Defendants in their official capacities)**

105. Plaintiff Trejo realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

106. California—along with many other states—requires that those who engage in the business of making small loans be licensed.

107. Defendants were not licensed to make loans in California or any other state.

108. Because Defendants' loans were made without the required license and/or charged excessive interest rates, those loans are void in California.

109. In addition to violating state licensing laws, Defendants' loans also violated the general usury laws of many states, including California.

110. Further, the lending agreements used for Plaintiff Trejo's and California Class members' loans contained unconscionable choice-of-law and forum-selection provisions that are void and unenforceable.

111. Because of the triple-digit interest rates, Plaintiff Trejo and certain California Class members with unpaid balances are subject to significant liability as the interest accrues on their unpaid debts.

112. Resolution of the validity and enforceability of the outstanding balance on Plaintiff Trejo's loan agreement by this Court will determine the rights and interests of the parties to their respective agreements.

113. Thus, the validity and enforceability of Plaintiff Trejo's loan agreements,

including, but not limited to, any outstanding balance, presents a substantial, non-speculative controversy between parties with adverse legal interests of sufficient immediacy and reality.

114. Accordingly, Plaintiff Trejo, on behalf of herself and the members of the California Class, seeks a determination that her loans and those of the California Class members are void and unenforceable, and that Plaintiff Trejo and the California Class members are not obligated to pay any principal and/or interest outstanding on the illegal loans under their respective state laws.

**NINTH CLAIM FOR RELIEF**
**Injunctive Relief for Violations of State Law**
**(On Behalf of Plaintiff Trejo and the California Class)**
**(Class Claims against Tribal Defendants in their official capacities for prospective relief)**

115. Plaintiff Trejo realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

116. As alleged herein, Plaintiff Trejo and other consumers in California applied for and took out loans with First Loan, Right Now Loans, and other entities affiliated with the Elem Indian Colony, which they maintain are void and unenforceable because they violate state licensing and usury laws.

117. Plaintiff Trejo and members of the California Class have outstanding balances on their loans with First Loan, Right Now Loans, and other entities affiliated with the Elem Indian Colony.

118. Because of the usurious interest rates charged by First Loan, Right Now Loans, and other entities affiliated with the Elem Indian Colony, Plaintiff Trejo and other consumers in California are subject to significant liability as the interest accrues on their unpaid debts.

119. Accordingly, Plaintiff Trejo, on behalf of herself and the California Class, seeks injunctive relief from Tribal Defendants, including, but not limited to, an order: (1) prohibiting Tribal Defendants from continuing to collect on the illegal loans in California; (2) requiring Tribal Defendants to send notices to California consumers explaining that their loans are illegal and usurious; and (3) prohibiting Tribal Defendants from selling the unlawful loans to consumers in

California to third-party debt collectors.

120. Plaintiff Trejo, on behalf of herself and all others similarly situated, further seeks a determination that she and the California Class members are not obligated to pay any principal and/or interest outstanding on the illegal loans.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Trejo prays for relief as follows:

A. An Order certifying the proposed Classes under Fed. R. Civ. P. 23(b)(2) and (b)(3), and appointing Plaintiff Trejo as Class Representative and her counsel as Class Counsel;

B. An Order declaring that Defendants have committed the violations of law alleged herein;

C. An Order providing for any and all injunctive relief the Court deems appropriate;

D. An Order awarding monetary damages, including, but not limited to, any compensatory, incidental, or consequential damages in an amount to be determined by the Court or jury;

E. An Order awarding treble damages in accordance with proof and in an amount consistent with applicable precedent;

F. An Order awarding interest at the maximum allowable legal rate on the foregoing sums;

G. An Order awarding Plaintiff Trejo her reasonable costs and expenses of suit, including attorneys' fees; and

H. Such further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Trejo respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated: November 13, 2025

Respectfully submitted,

/s/Marika K. O'Connor Grant
Marika O'Connor Grant, SBN 334469
John G. Albanese*
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5999
Fax: (612) 584-4470
moconnorgrant@bergermontague.com
jalbanese@bergermontague.com

*to be admitted *pro hac vice*

*Counsel for Plaintiff*